UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SIERRA JEAN FULLER,
Administrator of the Estate
of Tyrell Maurice Fuller,
*et al.*,

    Plaintiffs,

v.

FRANKLIN COUNTY, OHIO,
*et al.*,

    Defendants.

Case No. 2:14-cv-2556
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss of Defendants Maria Silvestri, Juliet Ratti, Viche Ferguson, and Jason Dowell (collectively, "Medical Personnel Defendants") (ECF No. 44); the Medical Personnel Defendants' Motion for Summary Judgment (ECF No. 61); the Motion to Dismiss of Defendants Franklin County, Ohio, Franklin County Sheriff Zach Scott, Creston Weppler,[1] Jason Lawler, and James Church (collectively, "Franklin County Defendants") (ECF No. 62); the Medical Personnel Defendants' Motion for Judgment on the Pleadings (ECF No. 63); and the Franklin County Defendants' Motion for Summary Judgment (ECF No. 65). Plaintiffs oppose these motions, and move for an extension of time to file an affidavit of merit (ECF No. 46).

For the reasons that follow, the Franklin County Defendants' Motion to Dismiss (ECF No. 62) and the Medical Personnel Defendants' Motion for Judgment on the Pleadings (ECF No. 63) are **GRANTED**.

---

[1] Counsel asserts that defendant Creston Weppler is deceased. (ECF No. 65, at p. 6.)

I.   BACKGROUND

Plaintiffs Sierra Jean Fuller and Netta McCarthy ("Plaintiffs") bring this cause of action as the surviving wife and mother, respectively, of the decedent, Tyrell Maurice Fuller. On December 29, 2015, Plaintiffs filed an amended complaint initiating the current action under 42 U.S.C. § 1983, alleging violations of their decedent's rights under the Fourteenth Amendment to the United States Constitution for failure to provide constitutionally adequate medical care to a pretrial detainee (Counts I, II, and III). Plaintiffs also alleged state law claims for negligence (Counts IV, V), intentional infliction of emotional distress (Count VI), respondeat superior (Count VII), medical malpractice (Count VIII), wrongful death (Count VIII [duplicate number]), and loss of consortium (Count IX). (Am. Compl., ECF No. 30.)

The following facts are taken from Plaintiffs' amended complaint (Am. Compl., ECF No. 30.)  Plaintiffs allege that Mr. Fuller entered the Franklin County Corrections Center I ("Corrections Center") on January 23, 2014.  Plaintiff further alleges that Mr. Fuller was to begin serving a four-year prison sentence. (Am. Compl., ECF No. 30, at p. 3, ¶ 21.) Prior to entering the Corrections Center, Mr. Fuller completed a Pre-Sentence Investigation, and "notified the probation department and the jail that he had a medical condition, namely Wolff-Parkinson-White syndrome, a disorder of the heart." Plaintiffs assert that, otherwise, he was "completely healthy." (Am. Compl., ECF No. 30, at p. 3, ¶¶ 21 -23.)

The next day, on January 24, 2014, Mr. Fuller "suffered from nausea, weakness, fatigue," and had problems eating or drinking. Sierra Fuller visited him that day, and noticed he was "not well." She and Mr. Fuller "notif[ied] the Corrections Center guards and medical staff of his condition." (Am. Compl., ECF No. 30, at pp. 3-4, ¶¶ 24 -25.)    The next day, on January 25, 2014, Mr. Fuller began vomiting blood throughout the day, and suffered from nausea and

2

weakness. He notified his wife "during a telephone conversation that he is extremely sick and that he has notified the Corrections Center guards and medical staff." (Am. Compl., ECF No. 30, at p. 4, ¶ 26.) On January 26, 2014, Mr. Fuller "can barely walk and had to be assisted into the visitation room." His wife could "visibly tell that Tyrell Fuller was extremely ill." "At this time Tyrell Fuller, Sierra Fuller, and Netta McCarthy (Tyrell's Mother) all contact the Corrections Center staff regarding Tyrell's condition." (Am. Compl., ECF No. 30, at p. 4, ¶ 27.)

On January 27, 2014, Netta McCarthy called the Corrections Center "to ask about her son's well-being." On that day, Mr. Fuller "passe[d] out at the Corrections Center without a pulse." "His fellow inmates perform CPR on Mr. Fuller for 20 minutes and immediately alert the Corrections Center staff. Roughly 20 minutes pass before any Corrections Center staff arrives to help Mr. Fuller." Mr. Fuller was transported to Grant Medical Center, where he was pronounced dead at 1:42 p.m. An autopsy was performed, and the cause of death was listed as "diabetic ketoacidosis." (Am. Compl., ECF No. 30, at p. 4, ¶¶ 28 -32.)

Plaintiffs assert their claims against two groups of defendants. The first group, the "Franklin County Defendants," consists of Franklin County, Ohio[2] and Sheriff Zach Scott, in his official capacity as supervisor of the Franklin County Corrections Center I facility, and Corrections Center guards Creston Weppler, Jason Lawler, and James Church (also "Corrections Center Guards"), who are being sued in both their official and individual capacities. The second group, the "Medical Personnel Defendants," consists of Maria Silvestri, Juliet Ratti, Viche Ferguson,

---

[2] "Ohio federal courts have dealt with th[e] issue" of "whether a county's lack of capacity to sue or be sued under [Ohio Rev. Code] Section 301.22 precludes the ability of such county to become amenable to a § 1983 claim pursuant to *Monell* [*v. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978)*]." *Stack v. Karnes*, 750 F. Supp. 2d 892, 894 (S.D. Ohio 2010) (comparing cases that found an Ohio county's *sui juris* status, or lack thereof, does not preclude application of § 1983, with cases that dismiss a *Monell* claim against an Ohio county for lack of *sui juris* status). In the instant action, however, this issue is of no moment because, as explained *infra*, even assuming Franklin County possesses the capacity to be sued, Plaintiffs have failed to sufficiently allege any claims against it or any of the other Franklin County defendants.

and Jason Dowell, who were medical specialists in the Corrections Center facility, and they are being sued in both their official and individual capacities. The Franklin County Defendants and the Medical Personnel Defendants move to dismiss Plaintiffs' amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), and Rule 12(c), respectively. (ECF No. 62, ECF No. 63.)

## II. THE FRANKLIN COUNTY DEFENDANTS' MOTION TO DISMISS (ECF No. 62) AND THE MEDICAL PERSONNEL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (ECF No. 63) ON PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983

### A. Standard of Review

The Federal Rules of Civil Procedure provide that, "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard courts apply for a motion to dismiss under Rule 12(b)(6). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). To state a claim upon which relief may be granted, Plaintiffs must satisfy the pleading requirements set forth in Fed. R. Civ. P. 8(a). While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying the plausibility standard articulated in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it][is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 677-79 (quoting *Twombly*, 550 U.S. at 55) (internal

4

quotations omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

In *Twombley*, the Supreme Court concluded that, to meet the Rule 8 standard, a complaint must "nudge [] [a plaintiff's] claims across the line from conceivable to plausible." 550 U.S. at 570. The Court held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [entitlement] to relief [pursuant to Rule 8(a)(2)] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and quotations omitted). "[N]aked assertion[s] … without some further factual enhancement[] stop[] short of the line between possibility and plausibility of entitle[ment] to relief." *Id.* at 557 (internal quotations omitted).

In *Iqbal*, the Court explained that one of the "principles" underlying *Twombley* is that the ordinary rule that courts must accept as true allegations made in pleadings for purposes of deciding a Rule 12(b)(6) motion does not apply to legal conclusions. *Id.* at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679-79.

### B. Discussion

Plaintiffs bring their civil rights action pursuant to 42 U.S.C. § 1983 against Correction Center guards Creston Weppler, Jason Lawler, and James Church and Correction Center medical personnel Maria Silvestri, Juliet Ratti, Viche Ferguson, and Jason Dowell (Count I); the Franklin

County Sheriff, Zach Scott (Count II); and against Franklin County (Count III), alleging that "the various Defendants exercised a deliberate indifference to the conditions of confinement of the deceased Tyrell M. Fuller while he was being held in the Franklin County Corrections Center I." (Am. Compl, ECF No. 30, at p. 2, ¶ 2.) Section 1983 provides in relevant part the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. A *prima facie* case under Section 1983 requires (1) conduct by an individual acting under color of state law, and (2) this conduct must deprive the plaintiff of rights secured by the Constitution or laws of the United States. *Day v. Wayne Cnty. Bd. of Auditors,* 749 F.2d 1199, 1202 (6th Cir.1984) (citing *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)). Section 1983 merely provides a vehicle for enforcing individual rights found elsewhere and does not of itself establish any substantive rights. *See Gonzaga Univ. v. Doe,* 536 U.S. 273, 285 (2002). Plaintiffs specifically assert that the individual rights that were violated are those found in the Fourteenth Amendment. (Am. Compl., ECF No. 30, at p.2, ¶ 1.) Pretrial detainees are protected by the Fourteenth Amendment's Due Process Clause, and are "entitled to the same Eighth Amendment rights as other inmates."[3] *Thompson v. County of Medina,* 29 F.3d 238, 242 (6th Cir. 1994). "Thus, Supreme Court precedents governing prisoners' Eighth Amendment rights also govern the Fourteenth Amendment rights of pretrial detainees." *Ruiz-Bueno v. Scott*, Nos. 14-4149/14-4151, 639 Fed. App'x. 354, *358, 2016 U.S. App. LEXIS 1904, at **10 (6th Cir. Feb. 2, 2016).

---

[3] The Amended Complaint alleges that Mr. Fuller's rights as "a pre-trial detainee" were violated. (Am. Compl., ECF No. 30, at p. 2, ¶ 3). However, several paragraphs later the Amended Complaint alleges that Mr. Fuller entered the Corrections Center to "begin serving a four-year prison sentence." (*Id.*, at p. 3, ¶ 21.)

In Count I, Plaintiffs allege that Corrections Center guards Creston Weppler, Jason Lawlor, and James Church, and the Medical Personnel Defendants Maria Silvestri, Juliet Ratti, Viche Ferguson, and Jason Dowell acted with deliberate indifference to Mr. Fuller's serious medical needs:

> 35. The Defendants acted with deliberate indifference to Tyrell Fuller's serious medical needs and therefor violated his constitutional rights by: (1) Failing to adequately treat Mr. Fuller's medical condition; (2) Failing to order and/or provide testing to determine the proper course of treatment for Mr. Fuller; (3) Failing to administer and/or summon proper medical care and treatment in the face of Mr. Fuller's dire and life-threatening medical condition; (4) Failing to administer and/or order medication or treatment, which caused Mr. Fuller's condition to decline; and (5) Ignoring clear signs that Mr. Fuller's life was in danger and he was suffering from a life-threatening medical condition.

(Am. Compl., ECF No. 30, at p. 5, ¶ 35.)

Count II addresses Franklin County Sheriff Zach Scott. It incorporates paragraph 35 of the amended complaint above, and additionally states:

> 37. Plaintiff[] claim[s] damages under 42 U.S.C. § 1983 for the injuries set forth above against Defendant Franklin County Sheriff Zach Scott for violation of the Plaintiff's constitutional rights under color of law.
>
> 38. Plaintiffs claim damages under 42 U.S.C. § 1983 against Defendant Franklin County Sheriff Zach Scott for failing to provide adequate medical treatment to Tyrell Fuller.

Count III addresses Franklin County. It incorporates all of the allegations through paragraph 38 of the amended complaint above, and additionally states:

> 40. The Franklin County developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of individuals held in the Franklin County Corrections Center I, which caused a violation of Plaintiff's rights.
>
> 41. It was the policy and/or custom of the Franklin County Corrections Center I and Franklin County, Ohio to fail to exercise reasonable care in the hiring of its

prison guards and employees at the Franklin County Corrections Center I, including John Doe I, John Doe II, Jane Doe I, and Jane Doe II.[4]

42. It was the policy and/or custom of the Franklin County Corrections Center I and Franklin County, Ohio to fail to properly create and execute specific plans to deal with inmates suffering from medical events in the Corrections Center.

43. This directly led to Franklin County, Ohio inadequately preventing constitutional violations on the part of its Corrections Center Employees.

44. It was the policy and/or custom of the Franklin County Corrections Center II and Franklin County, Ohio to inadequately supervise and train its police officers, including Jane Doe I and Jane Doe II.

45. This led to Franklin County, Ohio failing to discourage further constitutional violations on the part of its Corrections Center Employees.

46. As a result of the above described policies and customs, employees of the Franklin County Corrections Center I believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

47. The above described policies and customs demonstrate a deliberate indifference on the part of Franklin County, Ohio to the constitutional rights of persons being held in the Franklin County Corrections Center I.

(Am. Compl., ECF No. 30, at pp. 5-6, ¶¶ 40-47.)

1. **Franklin County and Sheriff Zach Scott**

The Franklin County Defendants assert that Plaintiffs' "brief factual summary lacks any mention of action or inaction by these Defendants." (ECF No. 62, at p. 5.) In support of their motion, they rely on the pleading standards set forth by the Supreme Court in *Iqbal* and *Twombley* and assert:

> Although Plaintiffs are not required to provide 'detailed factual allegations . . . a pleading that offers labels and conclusions of a formulaic recitation of the elements of the cause of action' is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 Supreme Court 1937 (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555, 127 Supreme Court 1955 (2007). Furthermore, a complaint will not

---

[4] In their motion to amend the complaint filed on November 23, 2015, Plaintiffs assert that the Amended Complaint "adds various guards and medical personnel in place of John & Jane Doe." (ECF No. 26, at p. 2.)

> suffice if it tenders naked assertions devoid of further factual enhancement. *Id.* (quoting *Twombley*, 550 U.S. at 557). Regarding these moving Defendants, there is no factual enhancement included in Plaintiffs' Complaint; there are only 'naked assertions' tendered as causes of action.

(ECF No. 62, at p. 5.)

In Count III, at paragraphs 40-47 of the amended complaint, *supra*, Plaintiffs allege that Franklin County "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of individuals held in the Franklin County Corrections Center I," had a policy or custom of "fail[ing] to properly create and execute specific plans to deal with inmates suffering from medical events in the Corrections Center," had a policy or custom of "fail[ing] to supervise or train its police officers," such that "employees of the Franklin County Corrections Center I believed that their actions would not be properly monitored by supervisory officers," and these policies and customs "demonstrate a deliberate indifference on the part of Franklin County, Ohio to the constitutional rights of persons being held in the Franklin County Corrections Center I." (Am. Compl., ECF No. 30, at pp. 5-6, ¶¶ 40-47.) Thus, Plaintiffs argue for municipal liability on the part of Franklin County, based on the Franklin County Sheriff's Office's failure to train officers "to deal with inmates suffering from medical events in the Corrections Center." (Am. Compl., ECF No. 30, at p. 5, ¶¶ 42-44.) The Sixth Circuit addressed this same issue recently in a case where the plaintiffs sought to impose liability on Franklin County in a similar instance, and explained:

> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). '[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' *Connick v. Thompson*, 563 U.S. 52, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (internal quotation marks omitted). 'A pattern of similar constitutional violations by untrained employees is ordinarily

> necessary to demonstrate deliberate indifference for purposes of failure to train.' *Id.* at 62 (internal quotation marks omitted).

*Ruiz-Bueno,* at 639 Fed. App'x., at *364, 2016 U.S. App. LEXIS 1904, at **26. In *Ruiz-Bueno,* the Sixth Circuit explained that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.*, at *364-65, **27, citing *Connick,* 563 U.S. at 62. Ultimately, the Sixth Circuit held that the plaintiffs "failed to demonstrate a pattern of constitutional violations" that satisfies the burden of proving deliberate indifference in that case. *Id.*

Similarly, the Plaintiffs in the case at bar allege that Franklin County maintained policies that "exhibit[ed] deliberate indifference to the constitutional rights of individuals." However, these are legal conclusions. The amended complaint provides no factual averments supporting these conclusions or connecting them with the events at the Corrections Center when Mr. Fuller collapsed. The averments contained in Count III are thus "naked assertions," and as they are unsupported by factual enhancement, the Court finds that Plaintiffs' Section 1983 claims against Franklin County are not plausible under *Twombley.* Accordingly, Count III is dismissed.

Likewise, Plaintiffs claim that Sheriff Scott is liable in his official capacity for the actions that transpired in the Corrections Center. Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Clellan,* 2011 WL 3627399, at *2, citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Social Servs.,* 436 U.S. 458, 690 n. 55 (1978)).

As this Court explained in *Clellan,*

> Supervisory liability 'requires that there must be a direct causal link between the acts of individual officers and the supervisory defendants.' *Hays v. Jefferson Cnty., Ky,* 668 F.2d 869, 872 (6th Cir. 1982) (citing *Rizzo v. Goode,* 423 U.S. 362, 370-71 (1976)). 'At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the

10

unconstitutional conduct of the offending officers.' *Id.* at 874. A supervisor cannot be subjected to liability based solely on his right to control employees who may have committed constitutional violations. *Id.* at 872.

*Clellan,* 2011 WL 3627399, at *3. In Count II of their amended complaint, Plaintiffs allege that "Sheriff Zach Scott is the party with direct supervisory authority over the Franklin County Corrections Center I" and that the Corrections Center guards and Medical Personnel defendants acted "with deliberate indifference to Tyrell Fuller's serious medical needs." (Am. Compl., ECF No. 30, at p. 3, 4-5, ¶ 14, ¶ 35.) However, the allegations do not contain enough, or even any, information concerning Sheriff Scott's role to render a claim for supervisory liability against him plausible. Rather, the allegations are akin to legal conclusions couched as factual allegations. As stated in *Clellan*, "more than just the existence of supervisory authority is required before a superior can be rendered liable for the constitutional violations of a subordinate." *Clellan,* 2011 WL 3627399, at *4. Accordingly, the Court grants the Franklin County Defendants' motion to dismiss Count II relating to Sheriff Scott.

### 2. The Medical Personnel Defendants and the Corrections Center Guards (members of the "Franklin County Defendants")

Count I addresses the Medical Personnel Defendants and the Correction Center Guards. The Medical Personnel Defendants concur with the issues raised by the Franklin County Defendants' brief in support of their motion to dismiss. (ECF No. 63, at p. 2.) In their brief, the Medical Personnel Defendants also assert that "[t]he civil rights claims against these defendants require[s] that plaintiffs prove their deliberate indifference to their decedent's substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 838, 114 S.Ct. 1970, 128 L.Ed. 811 (1994). (ECF No. 63, at p. 2.) In *Farmer*, the Court explained that, when the alleged Constitutional deprivation is based on an omission or failure to prevent harm, there must be evidence that the detainee was "incarcerated under conditions posing a substantial risk of serious harm." *Id.*

The Supreme Court has made it clear that, "[u]nder the Eighth Amendment, inmates have a right to adequate medical care for their serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 204-05 (1976). The necessary showing to meet the test for an Eighth Amendment violation was set forth in *Farmer* as follows:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation . . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38. For the failure to provide medical treatment to constitute a constitutional violation, Plaintiffs must show that Defendants acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, at 104. A constitutional claim for deliberate indifference contains both an objective and a subjective component. *Id.* Here, the Medical Personnel Defendants contend that neither the objective nor the subjective components are satisfied. "The objective component requires a plaintiff to show the existence of a 'sufficiently serious' medical need." *Id.* A medical need is objectively serious where a plaintiff's claims arise from an injury or illness "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897–900 (6th Cir.2004). The subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir.2001). "Critical to the

12

subjective inquiry is the requirement of specific evidence that each individual defendant acted with deliberate indifference." *Ruiz-Bueno*, 639 Fed. App'x at *359, 2016 U.S. App. LEXIS at **12-13. In *Ruiz-Bueno*, the Sixth Circuit considered the appeal of two Franklin County deputies from a denial of summary judgment. In reversing the District Court's decision, the Sixth Circuit considered evidence that the decedent asked members of the jail staff and nurses for medical treatment, and found that "these statements are too vague to establish subjective awareness on the part of any individual defendant." *Id*., at **14. "[T]he Fourteenth Amendment does not permit claims against jail officials for negligence, that is, claims regarding what jail officials *should* have known or *should* have done. Instead, it requires *deliberate indifference* to a known substantial risk of serious harm." *Id*. at **19 (emphasis original).

Similarly, in arguing that the complaint misses the mark in this case, the Medical Personnel Defendants point to the amended complaint's assertion in paragraph 25 that Mr. Fuller became ill, and "Corrections Center guards and medical staff" were notified. Defendants assert that the complaint is insufficient inasmuch as it "does not say to whom any communications were made, or, if they were made, what measures were taken in response." (ECF No. 63, at p. 3.) The Medical Personnel Defendants further assert that "[t]here is nothing in the complaint that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." (ECF No. 63, at p. 2.)

Plaintiffs' complaint alleges the Medical Personnel Defendants and Corrections Center Guard Defendants acted with "deliberate indifference to serious medical needs." Thus, both the objective and subjective components of the inquiry must be satisfied. Certainly some of Plaintiffs' allegations are such that one could draw the inference that at some point, decedent's illness was "so obvious that even a layperson would easily recognize the necessity for a doctor's

attention." *Blackmore,* 390 F.3d at 897–900. Plaintiffs make such averments in these paragraphs of the amended complaint:

> 29. On January 27th, 2014, Tyrell Fuller passes out at the Corrections Center without a pulse. His fellow inmates perform CPR on Mr. Fuller for 20 minutes and immediately alert the Corrections Center staff. Roughly 20 minutes pass before any Corrections Center staff arrives to help Mr. Fuller.
>
> 30. Tyrell Fuller was then transported to Grant Medical Center in Franklin County, Ohio.
>
> 31. Tyrell Fuller was pronounced dead on January 27, 2014 at 1:42 p.m.
>
> 32. An autopsy was performed and Mr. Fuller's cause of death was listed as diabetic ketoacidosis.

(Am. Compl., ECF No. 30, at p. 4, ¶¶ 29 -32.) Thus, certainly at some point, decedent's illness became objectively serious.

The remaining issue, then, is whether the allegations in the complaint meet the subjective component. The Court notes that there is no allegation that any of the medical personnel or Corrections Center guards knew that the decedent was diabetic. The complaint alleges that decedent "notified the probation department and the jail that he had a medical condition, namely Wolff-Parkinson-White syndrome, a disorder of the heart." Otherwise, he was "completely healthy." (Am. Compl., ECF No. 30, at p. 3, ¶¶ 21 -23.) The issue then, is whether the complaint "allege[s] facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock,* 273 F.3d at 703. This is where the allegations of the amended complaint fall short with respect to the medical personnel and the Corrections Center guards.

As noted above, the ordinary rule that courts must accept as true allegations made in pleadings for purposes of deciding a Rule 12(b)(6) motion does not apply to legal conclusions. *Iqbal*, at 678. In other words, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 678-79.

In applying the second component of the deliberate indifference test, the Court finds that the facts pled are insufficient to plausibly suggest that the Defendants subjectively perceived facts from which to infer substantial risk to the prisoner, did in fact draw the inference, and then disregarded that risk. Plaintiffs have failed to state a plausible Section 1983 claim against the Medical Personnel Defendants and Corrections Center Guards. Accordingly, Count I is dismissed.

### 3. PLAINTIFFS' STATE LAW CLAIMS

While this Court may, in its discretion, retain supplemental claims over pendent state law claims after the federal claims have been dismissed, such state law claims usually should also be dismissed. *See Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Because the Court in this Opinion and Order disposes of all of the Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's remaining state law claims are dismissed.

15

## 4. CONCLUSION

For the foregoing reasons, the Franklin County Defendants' Motion to Dismiss (ECF No. 62) and the Medical Personnel Defendants' Motion for Judgment on the Pleadings (ECF No. 63) are **GRANTED**. Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which are dismissed without prejudice. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

_9-30-2016_
**DATE**

EDMUND A. SARGUS, JR.
**CHIEF UNITED STATES DISTRICT JUDGE**